No. 26-2234

(CRIMINAL)

# In the United States Court of Appeals for the Eighth Circuit

UNITED STATES OF AMERICA

*Appellee,*

vs.

AIMEE MARIE BOCK

*Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

## BRIEF OF APPELLANT


Kenneth U. Udoibok, Esq.
KENNETH UBONG UDOIBOK, P.A.
Flour Exchange Building, Suite 5010
310 Fourth Avenue South
Minneapolis, MN 55415
Tel: (612) 808-6031
Fax: (612) 808-6033
k@kenulaw.com

*Attorney for Appellant*

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Appellant-Defendant Aimee Marie Bock (hereinafter "Bock"), founder and executive director of Feeding Our Future (hereinafter "FOF"), appeals convictions and a 500-month imprisonment sentence for wire fraud, federal-program bribery, and related conspiracies arising from Minnesota's pandemic-era federal child-nutrition programs.

This appeal presents a substantial question under *Snyder v. United States*, 603 U.S. 1 (2024): whether 18 U.S.C. § 666 bribery convictions may rest on an instruction that treats "continuing to sponsor" program participants as the relevant official act, without requiring a corrupt exchange tied to an identified act. That theory extends § 666 beyond *Snyder*. Bock also challenges the $242.8 million loss attributed to her. That figure triggered a 26-level enhancement because the Government treated all FOF reimbursements as losses without separating fraudulent claims from legitimate expenditures or crediting meals and services provided. This appeal further challenges the forfeiture judgment, the obstruction and charitable-misrepresentation enhancements, and the procedural and substantive reasonableness of the 500-month sentence. Oral argument is warranted because the appeal raises substantial questions about the post-*Snyder* scope of federal bribery law. Bock respectfully requests 30 minutes per side pursuant to Federal Rule of Appellate Procedure 34 and Eighth Circuit Rule 34A.

## TABLE OF CONTENTS

**SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT ......i**

**TABLE OF CONTENTS ........................................................................ ii**

**TABLE OF AUTHORITIES .................................................................... vi**

**JURISDICTIONAL STATEMENT..........................................................1**

**STATEMENT OF THE ISSUES............................................................2**

**STATEMENT OF THE CASE................................................................6**

A. Nature and Course of the Proceedings. ..........................................................6

B. The Federal Child-Nutrition Programs and Feeding Our Future.......................7

C. Government Witnesses Repeatedly Characterized Disputed Evidence............9

D. The $310,000 Payment and the Bribery Instructions......................................10

E. The Aggregate Reimbursement Evidence and the Loss Finding....................11

F. The Remaining Sentencing Rulings...............................................................13

**SUMMARY OF THE ARGUMENT ....................................................15**

I. The § 666 convictions were submitted under an impermissible gratuity theory.........................................................................................................15

II. The loss and restitution awards improperly equated gross payments with actual loss. .........................................................................................................16

III. The obstruction enhancement lacks the findings required by *Dunnigan*.........16

IV. The additional enhancements were not supported by the required statutory findings. .........................................................................................................17

V. The cumulative trial errors require a new trial..............................................17

VI. The sentence is procedurally and substantively unreasonable.........................18

VII. The forfeiture judgment requires statutory findings. ......................................18

VIII. The wire fraud convictions failed to show Bock's knowledge and intent.......18

**ARGUMENT** ................................................................................................ **20**

I. THE FEDERAL-PROGRAMS-BRIBERY CONVICTIONS CANNOT STAND BECAUSE THE JURY WAS PERMITTED TO CONVICT WITHOUT FINDING A PRE-ACT QUID PRO QUO FOR IDENTIFIED FUTURE SPONSORSHIP CONDUCT. ................................................20

A. *Snyder* makes the timing of the corrupt bargain decisive: § 666 punishes bribes, not rewards agreed upon after the relevant conduct............................21

B. The Count 40 instruction allowed an existing sponsorship relationship to supply the *quo* simply because it continued after the payment. ......................22

C. The separate "corruptly" definition reinforced the legally invalid reward theory, and the error was not harmless. ........................................................23

D. Count 40's instruction error was prejudicial..................................................24

E. Count 15 cannot rest on a conspiracy to commit conduct that is not § 666 bribery. ...........................................................................................................25

II. THE $242.8 MILLION LOSS FINDING AND MATCHING RESTITUTION ORDER MUST BE VACATED BECAUSE THE GOVERNMENT PROVED GROSS PROGRAM PAYMENTS, NOT NET PECUNIARY HARM. ........27

A. The Government never converted gross reimbursements into Guidelines loss. ...........................................................................................................28

B. The court failed to apply the Guidelines' required credit for legitimate value. ...........................................................................................................30

C. The Guidelines error was not harmless.........................................................33

D. The $242.8 million restitution order independently fails under the MVRA. ..34

III. THE OBSTRUCTION ENHANCEMENT MUST BE VACATED BECAUSE THE DISTRICT COURT DID NOT MAKE THE FINDINGS *DUNNIGAN* REQUIRES. ...........................................................................................35

A. The district court did not make the independent findings *Dunnigan* requires.36

B. The Government's changed theory underscores why the required findings were never developed.........................................................................37

C. The error was not harmless. .........................................................................38

IV. THE FOUR-LEVEL INCREASE RESTS ON TWO LEGAL ERRORS: THE GOVERNMENT DID NOT PROVE THE CHARITABLE MISREPRESENTATION § 2B1.1(b)(9)(A) REQUIRES OR THE STAFFORD ACT NEXUS REQUIRED BY § 2B1.1(b)(12). ........................39

A. Section 2B1.1(b)(9)(A) requires the specified charitable-purpose misrepresentation, not merely fraud committed through a nonprofit. .............39

B. Section 2B1.1(b)(12) required proof that the reimbursements were paid "in connection with" a Stafford Act declaration. ................................................41

V. THE GOVERNMENT'S INVESTIGATIVE OPINIONS DEPRIVED BOCK OF A FAIR TRIAL, AT LEAST ON THE BRIBERY COUNTS. .................42

A. Investigators repeatedly supplied the conclusion the jury had to draw. ..........43

B. The error was especially prejudicial on Counts 15 and 40. ............................44

VI. THE 500-MONTH SENTENCE MUST BE VACATED BECAUSE THE COURT SENTENCED FROM ERRONEOUS GUIDELINES ANCHOR AND DID NOT ADDRESS BOCK'S NATIONAL-DISPARITY SHOWING. ..........................................................................................................45

A. The $242.8 million loss figure anchored both the Guidelines calculation and the court's § 3553(a) analysis. ...................................................................46

B. The court did not address Bock's specific national-disparity argument under § 3553(a)(6). ..............................................................................................47

C. The combined procedural errors require resentencing under a correct framework. ...............................................................................................48

VII. THE $5.24 MILLION FORFEITURE JUDGMENT MUST BE VACATED BECAUSE THE COURT NEVER DETERMINED THE GOVERNING DEFINITION OF "PROCEEDS" OR APPLIED § 981(a)(2)(B). ..................49

A. Section 981(a)(2)(B) required the court to determine the statutory measure of proceeds before fixing the money judgment. ................................................50

B. The $5,241,522.79 judgment also lacks findings showing how the amount constituted traceable proceeds...................................................................51

C. Honeycutt is preserved, but current Eighth Circuit law makes § 981(a)(2)(B) the stronger ground for relief. ...................................................................52



Appellate Case: 26-2234 Page: 5 Date Filed: 08/21/2026 Entry ID: 5674871

VIII. THE GOVERNMENT FAILED TO PROVE BOCK'S PERSONAL KNOWLEDGE AND INTENT TO DEFRAUD. .......... 53

A. Evidence of site-level fraud did not establish Bock's knowing participation. 54

B. The sponsor certification established administrative responsibility—not deliberate falsity. .......... 55

C. The circumstantial evidence showed potential compliance problems, not knowledge of the charged falsities. .......... 56

D. The convictions cannot rest on supervisory or organizational liability. .......... 57

E. Cooperating-witness testimony did not establish knowledge of the charged wires. .......... 57

F. Roberts is materially different. .......... 58

G. The Charged Emails Do Not Independently Establish *Mens Rea*. .......... 60

**CONCLUSION .......... 61**

## TABLE OF AUTHORITIES

## CASES

*Burks v. United States*, 437 U.S. 1, 16–18 (1978) ............................................26
*Gall v. United States*, 552 U.S. 38 (2007) ...................... 2, 4, 16, 18, 27, 46, 48, 49
*Greenlaw v. United States*, 554 U.S. 237, 253 (2008)..........................................27
*Griffin v. United States*, 502 U.S. 46, 59 (1991)............................................24, 26
*Honeycutt v. United States*, 581 U.S. 443 (2017) ...........................................5, 52
*McDonnell v. United States*, 579 U.S. 550, 569–72 (2016) .................................21
*Molina-Martinez v. United States*, 578 U.S. 189, 198–200 (2016)......34, 39, 46, 49
*Musacchio v. United States*, 577 U.S. 237, 243–44 (2016).............................20, 54
*Neder v. United States*, 527 U.S. 1, 25 (1999)..........................................19, 24, 53
*Pepper v. United States*, 562 U.S. 476, 488–90 (2011)..................................16, 31
*Rita v. United States*, 551 U.S. 338 (2007)..........................................4, 18, 48, 49
*Snyder v. United States*, 603 U.S. 1 (2024) ..................... 2, 6, 15, 20-23, 25, 26, 44
*United States v. Adejumo*, 848 F.3d 868, 871–72 (8th Cir. 2017).........................34
*United States v. Asomani*, 7 F.4th 749 (8th Cir. 2021).......................................5, 52
*United States v. Baldenegro-Valdez*, 703 F.3d 1117, 1124–25 (8th Cir. 2013).....43
*United States v. Barrera*, 112 F.4th 614, 617–20 (8th Cir. 2024)..........................35
*United States v. Blackman*, 897 F.2d 309 (8th Cir. 1990) .......................................3
*United States v. Boesen*, 541 F.3d 838, 850–51 (8th Cir. 2008) ...........................29
*United States v. Boyle*, 700 F.3d 1138, 1143 (8th Cir. 2012)..........................24, 26
*United States v. Broeker*, 27 F.4th 1331, 1335 (8th Cir. 2022).............................20
*United States v. Bruguier*, 961 F.3d 1031, 1033–34 (8th Cir. 2020) ...............36, 37
*United States v. Chalupnik*, 514 F.3d 748, 754–55 (8th Cir. 2008) .......................34
*United States v. Dierks*, 978 F.3d 585, 592 (8th Cir. 2020) ..................4, 42, 43, 44
*United States v. Dunnigan*, 507 U.S. 87 (1993) .............................. 3, 16, 17, 35-39
*United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) ........................18, 46
*United States v. Foard*, 108 F.4th 729, 736 (8th Cir. 2024)............................39, 40
*United States v. Frazier*, 651 F.3d 899, 910–11 (8th Cir. 2011)...........................34
*United States v. Gamar Ahmed*, 103 F.4th 1318, 1324–25 (8th Cir. 2024) ............4
*United States v. Garbacz*, 33 F.4th 459, 467–68 (8th Cir. 2022) ..............................
........................................................................... 5, 19, 49, 51, 53, 56-58
*United States v. Gomez-Diaz*, 911 F.3d 931, 936–37 (8th Cir. 2018)..17, 34, 36, 38
*United States v. Gregoire*, 638 F.3d 962, 972 (8th Cir. 2011) ..........................5, 51
*United States v. Hamilton*, 46 F.4th 389, 397 (5th Cir. 2022)................................2
*United States v. Hulshof*, 23 F.3d 1470 (8th Cir. 1994) ...........................................3
*United States v. Johnson*, 745 F.3d 866, 869 (8th Cir. 2014)................................53



Appellate Case: 26-2234 Page: 7 Date Filed: 08/21/2026 Entry ID: 5674871

*United States v. Karie*, 976 F.3d 800, 804 (8th Cir. 2020)........................32, 33, 35
*United States v. Lazarski*, 560 F.3d 731 (8th Cir. 2009) .........................................4
*United States v. Liveoak*, 377 F.3d 859, 867 (8th Cir. 2004) .....................30, 32, 33
*United States v. Lozier*, 118 F.4th 1053, 1056 (8th Cir. 2024)..............................20
*United States v. Luna*, 968 F.3d 922, 929–30 (8th Cir. 2020)...................32, 33, 35
*United States v. Markert*, 732 F.3d 920, 931–33 (8th Cir. 2013)..............................
.................................................................................... 2, 16, 27, 28, 30, 32, 33
*United States v. Markert*, 774 F.3d 922, 925–27 (8th Cir. 2014)..........................28
*United States v. Matheny*, 42 F.4th 837, 845 (8th Cir. 2022)................................27
*United States v. McArthur*, 850 F.3d 925, 943 (8th Cir. 2017) ............................27
*United States v. McGrew*, 846 F.3d 277 (8th Cir. 2017).........................................3
*United States v. McKanry*, 628 F.3d 1010, 1017 (8th Cir. 2011).. 19, 28, 56, 57, 60
*United States v. Miller*, 91 F.3d 1160 (8th Cir. 1996) .............................................3
*United States v. Myore*, 134 F.4th 1000, 1012–13 (8th Cir. 2025) ........................36
*United States v. Nock*, 148 F.4th 607 (8th Cir. 2025).............................................4
*United States v. Nshanian*, 821 F.3d 1013, 1017 (8th Cir. 2016)............................5
*United States v. Olano*, 507 U.S. 725, 732–36 (1993) .........................................42
*United States v. Olsen*, 760 F.3d 825 (8th Cir. 2014)..................................3, 41, 42
*United States v. Peithman*, 917 F.3d 635, 651 (8th Cir. 2019)........................ 49-52
*United States v. Peoples*, 250 F.3d 630, 640–42 (8th Cir. 2001) ..............17, 43, 44
*United States v. Pizano*, 421 F.3d 707 (8th Cir. 2005).........................................54
*United States v. Proffit*, 49 F.3d 404, 406 (8th Cir. 1995)...............................57, 58
*United States v. Richey*, 758 F.3d 999, 1002–03 (8th Cir. 2014) ..........................49
*United States v. Riddle*, 193 F.3d 995, 998 (8th Cir. 1999)...............................4, 45
*United States v. Roberts*, 881 F.3d 1049, 1052–53 (8th Cir. 2018) ............5, 58, 59
*United States v. Samples*, 456 F.3d 875, 892–93 (8th Cir. 2006)............................4
*United States v. Suhl*, 885 F.3d 1106, 1112–14 & n.5 (8th Cir. 2018)...2, 15, 21, 25
*United States v. Timberlake*, No. 25-1351, slip op. at 6 (8th Cir. Mar. 20, 2026) .42
*United States v. Walker*, 818 F.3d 416, 422 (8th Cir. 2016) ................................27
*United States v. Whitehead*, 176 F.3d 1030 (8th Cir. 1999)....................................2
*United States v. Woodard*, 315 F.3d 1000, 1004 (8th Cir. 2003)..........................25
*United States v. Wrehe*, 628 F.2d 1079 (8th Cir. 1980).........................................54
*United States v. Zimmermann*, 509 F.3d 920, 927 (8th Cir. 2007)....................2, 21
*Yates v. United States*, 354 U.S. 298, 312 (1957)............................................24, 26

**STATUTES AND OTHER AUTHORITIES**

18 U.S.C. § 1040 ........................................................................3, 17, 41, 42
18 U.S.C. § 1343 ........................................................................5, 19, 53, 58
18 U.S.C. § 3231 ..........................................................................................1
18 U.S.C. § 3553(a) ..................................................................34, 38, 46–49

18 U.S.C. § 3661 ........ 16, 31
18 U.S.C. § 3663A ........ 34
18 U.S.C. § 3664(e) ........ 34
18 U.S.C. § 3742 ........ 1
18 U.S.C. § 666 ........ 2, 6, 10, 15, 21, 23–26
18 U.S.C. § 981(a)(1)(C) ........ 50, 52
18 U.S.C. § 981(a)(2)(A) ........ 4, 18, 50, 52
18 U.S.C. § 981(a)(2)(B) ........ 4, 5, 14, 18, 49, 50-52
28 U.S.C. § 1291 ........ 1
28 U.S.C. § 2461(c) ........ 50
42 U.S.C. § 1761 ........ 41
42 U.S.C. § 1766 ........ 3, 41
Families First Coronavirus Response Act, Pub. L. No. 116-127, § 2202, 134 Stat. 178, 185–86 (2020) ........ 41

## RULES

Fed. R. App. P. 4(b) ........ 1
Fed. R. Crim. P. 32(i) ........ 3
Fed. R. Crim. P. 32.2(b)(1)(A) ........ 51
Fed. R. Evid. 701 ........ 43
Fed. R. App. P. 32(f) ........ 62
Fed. R. App. P. 32(a)(7)(B) ........ 62
Fed. R. App. P. 32(a)(6) ........ 62
Fed. R. App. P. 32(a)(5) ........ 62
8th Cir. R. 28A(h)(2) ........ 63

## UNITED STATES SENTENCING GUIDELINES

U.S.S.G. § 1B1.3(a)(2) ........ 29
U.S.S.G. § 1B1.4 ........ 31
U.S.S.G. § 2B1.1 ........ 3, 13, 16, 28, 30, 33, 39, 40, 46–48
U.S.S.G. § 2B1.1(b)(1)(N) ........ 30
U.S.S.G. § 2B1.1(b)(9)(A) ........ 3, 13, 17, 39
U.S.S.G. § 2B1.1(b)(12) ........ 3, 13, 39, 41
U.S.S.G. § 3C1.1 ........ 13, 35–39
U.S.S.G. § 6A1.3(a) ........ 31

## JURISDICTIONAL STATEMENT

The Honorable Nancy E. Brasel, United States District Court Judge for the District of Minnesota, presided over Bock's Sentencing Hearing on May 21, 2026. The United States of America (hereinafter "Government") invoked the jurisdiction of the United States District Court for the District of Minnesota pursuant to 18 U.S.C. § 3231. The District Court clerk entered judgment on the docket on June 5, 2026. Bock filed a notice of appeal on June 16, 2026. That notice was timely under Federal Rule of Appellate Procedure 4(b). Bock invokes this Court's jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.



Appellate Case: 26-2234 Page: 10 Date Filed: 08/21/2026 Entry ID: 5674871

## STATEMENT OF THE ISSUES

**I.** Whether the 18 U.S.C. § 666 convictions (Counts 15 and 40) must be reversed because the instructions permitted convictions based on a reward for past sponsorship conduct rather than an advance agreement to exchange payment for identified future official conduct.

**Supporting Authority:**

*Snyder v. United States*, 603 U.S. 1 (2024)

*United States v. Suhl*, 885 F.3d 1106, 1112–13 (8th Cir. 2018)

**Opposing Authority:**

*United States v. Zimmermann*, 509 F.3d 920, 927 (8th Cir. 2007)

*United States v. Hamilton*, 46 F.4th 389, 397 (5th Cir. 2022)

**II.** Whether the district court erred by treating approximately $242.8 million in gross reimbursements as Guidelines loss and restitution without determining actual net pecuniary harm or crediting legitimate value provided.

**Supporting Authority:**

*Gall v. United States*, 552 U.S. 38 (2007)

*United States v. Markert*, 732 F.3d 920 (8th Cir. 2013)

**Opposing Authority:**

*United States v. Whitehead,* 176 F.3d 1030 (8th Cir. 1999)

*United States v. Hulshof,* 23 F.3d 1470 (8th Cir. 1994)

**III.** Whether the obstruction enhancement must be vacated because the district court did not make the independent findings of materiality and willful falsity required by *United States v. Dunnigan*, 507 U.S. 87 (1993).

**Supporting Authority:**

Fed. R. Crim. P. 32(i)

*United States v. Dunnigan*, 507 U.S. 87 (1993)

**Opposing Authority:**

*United States v. Blackman,* 897 F.2d 309 (8th Cir. 1990)

*United States v. Miller,* 91 F.3d 1160 (8th Cir. 1996)

**IV.** Whether the charitable-organization and emergency-benefit enhancements were imposed without proof of the elements required by U.S.S.G. § 2B1.1(b)(9)(A), (b)(12), and 18 U.S.C. §1040.

**Supporting Authority:**

42 U.S.C. § 1766

18 U.S.C. § 1040

**Opposing Authority:**

*United States v. Olsen, 760 F.3d 825 (8th Cir. 2014)*

*United States v. McGrew*, 846 F.3d 277 (8th Cir. 2017)

**V.** Whether cumulative evidentiary and prosecutorial errors deprived Bock of a fair trial.

**Supporting Authority:**

*United States v. Riddle,* 193 F.3d 995, 998 (8th Cir. 1999)

*United States v. Samples,* 456 F.3d 875, 892–93 (8th Cir. 2006)

**Opposing Authority:**

*United States v. Nock*, 148 F.4th 607 (8th Cir. 2025)

*United States v. Dierks*, 978 F.3d 585, 592 (8th Cir. 2020)

**VI.** Whether the 500-month sentence is procedurally and substantively unreasonable because it rests on an erroneous Guidelines calculation, unresolved allegations, and inadequate consideration of national sentencing disparities.

**Supporting Authority:**

*Gall v. United States,* 552 U.S. 38, 49–51 (2007)

*Rita v. United States,* 551 U.S. 338 (2007)

**Opposing Authority:**

*United States v. Gamar Ahmed,* 103 F.4th 1318, 1324–25 (8th Cir. 2024)

*United States v. Lazarski*, 560 F.3d 731 (8th Cir. 2009)

**VII.** Whether the forfeiture judgment must be vacated or remanded because the court did not determine the applicable statutory definition of proceeds or deduct direct costs pursuant to 18 U.S.C. § 981(a)(2)(A) or 18 U.S.C. § 981(a)(2)(B).

**Supporting Authority**:

18 U.S.C. § 981(a)(2)(B)

*Honeycutt v. United States*, 581 U.S. 443 (2017)

**Opposing Authority**:

*United States v. Asomani*, 7 F.4th 749 (8th Cir. 2021)

*United States v. Gregoire*, 638 F.3d 962, 972 (8th Cir. 2011)

**VIII.** Whether the wire fraud convictions must be reversed because the Government failed to prove Bock's knowledge and intent of the fraud.

**Supporting Authority**:

18 U.S.C. § 1343

*United States v. Garbacz*, 33 F.4th 459, 467–68 (8th Cir. 2022)

**Opposing Authority**:

*United States v. Roberts,* 881 F.3d 1049, 1052–53 (8th Cir. 2018)

*United States v. Nshanian,* 821 F.3d 1013, 1017 (8th Cir. 2016)

## STATEMENT OF THE CASE

### A. Nature and Course of the Proceedings.

On September 13, 2022, a grand jury returned a sixty-one-count indictment arising from Minnesota's administration of federal child-nutrition programs. (R. Doc. 1.)[1] Bock was charged with wire-fraud conspiracy (Count 1), wire fraud (Counts 2, 4, 5, and 12), bribery conspiracy (Count 15), and federal-program bribery under 18 U.S.C. § 666(a)(1)(B) (Count 40). *Id.*

Before trial, Bock moved to dismiss the bribery charges and later supplemented her motion under *Snyder v. United States*, 603 U.S. 1 (2024). She argued that the $310,000 payment underlying Count 40 occurred after FOF began sponsoring the Safari/Cosmopolitan operation and therefore could not support a § 666 bribery charge without proof of a corrupt bargain formed before the identified future sponsorship conduct. (R. Docs. 194, 198, 327). The district court denied Bock's request. She unsuccessfully renewed the request in her Rule 29 and post-verdict motions. (R. Docs. 626, 756).

---

[1] R. Doc. – District Court Record
TR., vol. – Trial Transcript Volume
ST – Sentencing Transcript
Gov't Ex. – Government's Exhibit
Trial Exhibits provided on USB drives



Appellate Case: 26-2234 Page: 15 Date Filed: 08/21/2026 Entry ID: 5674871

Bock and co-defendant Salim Said were tried over twenty-one trial days from February 3 through March 18, 2025. On March 19, 2025, after approximately five hours of deliberation, the jury returned guilty verdicts on all counts. (TR., vol. XXII, pp. 5031–36).

At the sentencing hearing on May 21, 2026, the district court found $242,807,755 in loss, applied a 26-level loss enhancement and other contested enhancements, and calculated an adjusted offense level of 45, capped at 43 points. (ST 25, 31–37). The resulting advisory sentence was the aggregate statutory maximum of 1,200 months. (Id. at 37). The Government requested 600 months. (Id. at 43). The court imposed 500 months' imprisonment, $242,807,255 in restitution, and a $5,241,522.79 forfeiture money judgment. (Id. at 24, 53–54). The district court entered judgment on June 5, 2026, and Bock timely appealed her conviction on June 16, 2026. (Add. A1–A7).

**B. The Federal Child-Nutrition Programs and Feeding Our Future.**

The United States Department of Agriculture ("USDA") funds the federal child-nutrition programs at issue, and the Minnesota Department of Education ("MDE") administers them in Minnesota. MDE certified the sponsors. (TR., vol. XVIII, p. 4003). FOF staff process their claims. (TR., vol. XVII, pp. 3741-3744). Sponsors like FOF enroll meal sites and submit reimbursement claims through MDE's CLiCS system. (Gov't Exs. V3, V38). They distribute reimbursements and

retain authorized administrative fees. During the COVID-19 pandemic, USDA waived program requirements and, for a period, permitted for-profit restaurants to participate as meal sites. (TR., vol. II, p. 248; R. Doc. 875 at 5). MDE's claims system did not require human review of every reimbursement claim. MDE employee Emily Honer confirmed that no person evaluated each submitted claim for approval or denial. (TR., vol. III, p. 482, 499).

Bock served as an executive director when FOF grew to approximately 300 sponsored sites. As a sponsor, FOF submitted site applications and monthly claims, distributed reimbursement checks, and retained program-authorized administrative fees. (ST 6–7). The indictment alleged that sponsors retained 10 to 15 percent as administrative fees and distributed the remaining funds to sites. (R. Doc. 1, at ¶¶ 7–10).

The Government alleged that pandemic-era growth concealed widespread fraud. Its evidence included cooperating site operators, meal-count records with nearly identical daily totals, a roster spreadsheet containing the formula, and the four emails charged as substantive wire fraud counts. (Gov't Exs. C-2, C-22, F-7, G-3, Z-12; R. Doc. 756 at 6–8). Cooperating witnesses described payments to FOF employees and site-expansion efforts. The court instructed the jury that the cooperators' guilty pleas were not evidence of Bock's guilt. (TR., vol. XXI, pp. 4977–79).

## C. Government Witnesses Repeatedly Characterized Disputed Evidence.

Several Government witnesses described disputed evidence in terms of ultimate legal conclusions. Agents Travis Wilmer, Agent Joshua Parks, Agent Lacramioara Blackwell, Postal Inspector John Western, and forensic accountant Pauline Roase called meal counts “fake, inflated,” described a roster as fake because “agents did research,” referred to checks as “kickback payments,” and labeled entities “shell companies . . . used . . . to facilitate this fraud scheme.” (TR., vol. VI, pp. 1152, 1173; vol. VII, pp. 1527, 1544–45; vol. XV, p. 3404). Over the defense objection, Agent Travis Wilmer testified: “This is a kickback payment . . . and is charged as one of the counts.” (TR., vol. XII, p. 2785).

Later that day, after Agent Travis Wilmer described a payment as money used to “front their business,” the district court struck the answer and instructed the prosecutor to “avoid the conclusory statements that tend to be legal conclusions.” (TR., vol. XII, pp. 2811–13). On later direct examination, however, Agent Travis Wilmer characterized transactions as kickbacks: “To me it fit the pattern of a kickback”; “I conclude that this fits the pattern of a kickback”; and a transaction “was a kickback.” (TR., vol. XIII, pp. 3058–59; vol. XIV, p. 3097). When the defense sought comparable opinion testimony, the Government successfully objected, claiming “improper opinion and speculation” and “calls for a legal conclusion.” (TR., vol. IV, p. 843; vol. VIII, p. 1663).

## D. The $310,000 Payment and the Bribery Instructions.

Count 40 charged Bock with accepting $310,000 from Cosmopolitan Business Solutions, which did business as Safari Restaurant and was associated with Defendant Salim Said. (R. Doc. 1., ¶¶ 140–41, 178, 180; R. Doc. 756 at 15 & n.3). FOF's sponsorship relationship with Safari/Cosmopolitan began with an April 2020 site application. (Gov't Ex. B-4 at 9). The $310,000 check was dated August 13, 2021—approximately sixteen months later. (Gov't Ex. S-11).

The Government contended that the $310,000 transaction was a disguised payment rather than a legitimate daycare purchase. It relied on evidence concerning the absence of a daycare license and enrolled customers, the purchase agreement and check, bank-deposit video, and an FOF payment of approximately $476,000 to Cosmopolitan the preceding day. (Gov't Exs. HH-26, S-11, S-12, Z-40; R. Doc. 756 at 18; TR., vol. XVIII, pp. 4177, 4182, 4191). Bock testified that the transaction was a legitimate purchase of a childcare business that had not opened when pandemic conditions altered demand for daycares. (TR., vol. XVIII, pp. 3984–91).

The district court generally instructed the jury that § 666 distinguishes bribes from gratuities and that a bribe is a payment "made or agreed to before an official act in order to influence the official." (TR., vol. XXI, pp. 5000–01). For Count 40, the third element required a finding that "the agreement to make the payment



Appellate Case: 26-2234 Page: 19 Date Filed: 08/21/2026 Entry ID: 5674871

occurred before an official act in order to influence Aimee Bock with respect to that future official act, meaning sponsoring or continuing to sponsor Cosmopolitan Business Solutions' fraudulent participation." (Id. at p. 5005–06). The "continuing to sponsor" formulation appeared in the Government's requested instructions. (R. Doc. 419 at 103; R. Doc. 756 at 20). The court separately defined "corruptly" to include acting "at least in part in return for being influenced or induced to cause or as a reward for causing" FOF's sponsorship. (TR., vol. XXI, pp. 5005-06).

**E. The Aggregate Reimbursement Evidence and the Loss Finding.**

Government Exhibit X-1, "Feeding Our Future Claims By Site, Dollar Amounts," compiled CLiCS[2] data for FOF-sponsored sites. Special Agent Jared Kary testified that the scope of loss was approximately $246 million total covered payments and representing the period "all the way from 2018 to 2021." (TR., vol. IV, pp. 697–99). By contrast, the Government described the fraudulent scheme as lasting 21 months. (R. Doc. 875 at 4–5).

The Government did not perform a claim-by-claim segregation or apply a supported fraud rate to distinguish fraudulent claims from legitimate value across the network. At trial, Agent Jared Kary testified that investigators did not account

[2] CLiCS is MDE's Child Nutrition Program claims electronic system through which sponsors such as FOF submitted reimbursement claims to MDE for their sponsored meal sites. The site generated the underlying meal-count information; FOF, as sponsor, transmitted the reimbursement claim through CLiCS to MDE.



Appellate Case: 26-2234 Page: 20 Date Filed: 08/21/2026 Entry ID: 5674871

for documented food purchases because they believed much of the food purchased was a "facade." (TR., vol. IX, p. 1921). The Government's forensic accountant, Pauline Roase, testified that she did not have experience "in this type of field." (TR., vol. XIV, pp. 3288–89; *see also* TR., vol. XV, p. 3463).

At sentencing, the PSR attributed $242,807,755 in loss to Bock and FOF. (PSR ¶ 53). Bock objected, arguing that the figure treated gross reimbursements as losses, failed to account for the fair market value of meals and services, and lacked a reliable methodology. (R. Doc. 878 at 3). Her submission identified approximately $28 million to $33.1 million in food purchases reflected in records from just fourteen vendors, including records produced through Government subpoenas, and argued that those records demonstrated substantial meal-service value that had not been measured. (Id. at 3–4; ST 27).

When the parties addressed the discrepancy between X-1's approximately $246 million total and the PSR's $242.8 million figure, the court stated, "I'm not sure if it's on X1 or other exhibits," before accepting the Government's explanation. (ST 8–9). The court overruled the loss objection, emphasizing Bock's role in submitting site applications and signing reimbursement claims. (Id. at 25–28). Regarding the vendor and fair-market-value evidence, the court began: "None of that was in the trial. So that's the first problem." (Id. at 27–28). It also



Appellate Case: 26-2234 Page: 21 Date Filed: 08/21/2026 Entry ID: 5674871

found the records insufficiently connected to FOF meal services and reasoned that distributing some meals could have lent the scheme legitimacy. (Id.).

**F. The Remaining Sentencing Rulings.**

The PSR recommended a two-level obstruction enhancement under U.S.S.G. § 3C1.1 based on FOF's litigation against MDE, and the Government supported that theory. (PSR ¶ 108; R. Doc. 875 at 17–18). At sentencing, however, the Government vacillated: "The government is not adopting a specific view as to whether or not Ms. Bock's testimony constituted perjury." (ST 11). The district court said it was "leaving aside the MDE lawsuit" and instead imposed the enhancement based on four portions of Bock's trial testimony. (Id. 34–35).

Bock also objected to two separate two-level enhancements: charitable misrepresentation under U.S.S.G. § 2B1.1(b)(9)(A) and emergency-benefits fraud under § 2B1.1(b)(12). (R. Doc. 878 at 38-42). The district court overruled both objections. (ST 31–32). On the charitable enhancement, it reasoned that reimbursement requests represented that Bock acted on behalf of a charity when, "[i]n reality, she was acting on behalf of a fraud scheme." (Id. 31).

Regarding sentencing disparity, Bock submitted ten years of Sentencing Commission data covering 40,543 representing §2B1.1 defendants in Criminal History Category I. Her submission reported that all 88 defendants at offense level 43 received below-Guidelines sentences, with a median of 12.2 years. (R. Doc.



Appellate Case: 26-2234 Page: 22 Date Filed: 08/21/2026 Entry ID: 5674871

878 at 49-54). The court's sentencing explanation addressed Bock's responsibility, MDE, and another sponsor but did not discuss the national dataset. (ST 52–57).

During allocution, Bock stated: "I understand the jury's verdict. I understand that I failed. I failed the public. I failed my family. I failed everyone…I know I'm responsible." (ST 51–52). In imposing 500 months, the district court described the case as a "vortex of fraud," with Bock at its "epicenter," and stated: "I see in you the opposite of remorse. You continue to blame others, defy court orders, even while convicted and imprisoned." (Id. at 57).

The court also imposed a $5,241,522.79 forfeiture money judgment, including approximately $3.5 million seized from FOF's operating account and the $310,000 payment. (ST 15–17, 22, 53–54). Bock argued that 18 U.S.C. § 981(a)(2)(B)'s net-proceeds rule governed and required the deduction of direct costs. (R. Doc. 878 at 31-36).



Appellate Case: 26-2234 Page: 23 Date Filed: 08/21/2026 Entry ID: 5674871

## SUMMARY OF THE ARGUMENT

### I. The § 666 convictions were submitted under an impermissible gratuity theory.

Section 666 criminalizes bribery—not every payment made after an official act. *Snyder v. United States*. The critical question is when the parties formed the agreement, not when they delivered payment. "The timing of the agreement is the key, not the timing of payment." *Snyder*, 603 U.S. 1, 18–19. Here, sponsorship of Cosmopolitan began approximately sixteen months before the $310,000 payment. The instruction defined the relevant official conduct as "sponsoring or continuing to sponsor" Cosmopolitan's participation. That language did not identify a particular future approval, claim, renewal, or other official act. It allowed the jury to infer bribery from the payment and the continuation of an existing relationship—the gratuity theory rejected in *Snyder*.

The Government may prove a *quid pro quo* circumstantially, but it must prove an advance agreement for future official conduct. *United States v. Suhl*, 885 F.3d 1106, 1112–14 (8th Cir. 2018). Because the instructions permitted conviction without that finding, this Court must reverse the convictions. If the evidence is insufficient under the correct law, this Court must grant judgment of acquittal. Otherwise, a new trial is necessary.



Appellate Case: 26-2234 Page: 24 Date Filed: 08/21/2026 Entry ID: 5674871

## II. The loss and restitution awards improperly equated gross payments with actual loss.

The Guidelines measure actual pecuniary harm, not the gross amount of every payment associated with a program. U.S.S.G. § 2B1.1; *United States v. Markert*, 732 F.3d 920, 931–33 (8th Cir. 2013). The Government relied on aggregate reimbursement data covering 2018 through 2021, although it described the charged scheme as substantially shorter. It did not reliably separate fraudulent claims from legitimate claims or determine the value of meals and services provided.

The district court erroneously rejected Bock's sentencing evidence because it "was not in the trial." Sentencing submissions are not limited to evidence admitted at trial. 18 U.S.C. § 3661; *Gall v. United States*, 552 U.S. 38 (2007); *Pepper v. United States*, 562 U.S. 476, 488–90 (2011). The loss enhancement and the restitution award should be vacated and recalculated under a net-loss methodology.

## III. The obstruction enhancement lacks the findings required by *Dunnigan*.

Bock should not receive an obstruction enhancement merely because the court disbelieves her testimony. The court must identify testimony that was false, material, and willfully deceptive. *United States v. Dunnigan*, 507 U.S. 87, 94–95 (1993). The district court instead described broad categories of testimony as false without identifying each material falsehood or explaining why the testimony

reflected intentional deception rather than mistake or faulty memory. That does not satisfy *Dunnigan or United States v. Gomez-Diaz*, 911 F.3d 931, 936–37 (8th Cir. 2018).

**IV. The additional enhancements were not supported by the required statutory findings.**

The charitable-organization enhancement requires a qualifying misrepresentation that the defendant was acting on behalf of a charitable organization. U.S.S.G. § 2B1.1(b)(9)(A). The court identified alleged fraud involving meals, rosters, and claims, but did not identify the required charitable-purpose misrepresentation.

The emergency-benefit enhancement incorporates 18 U.S.C. § 1040, which requires a benefit paid in connection with a Stafford Act declaration. The underlying nutrition programs predated COVID-19. Temporary pandemic waivers altered program administration but did not, without more, establish that every reimbursement was a Stafford Act benefit.

**V. The cumulative trial errors require a new trial.**

Government agents repeatedly characterized disputed evidence as "fake," "shell companies," and "kickback payments." Such testimony risked supplanting the jury's fact-finding with investigators' conclusions. *United States v. Peoples*, 250 F.3d 630, 640–42 (8th Cir. 2001). The risk was especially acute on the bribery

counts, where the jury had to determine whether the payments reflected an advance *quid pro quo*.

## VI. The sentence is procedurally and substantively unreasonable.

The sentence began with an erroneous loss calculation, relied on unresolved allegations of post-verdict misconduct, and did not meaningfully address Bock's national-disparity evidence. A sentencing court must correctly calculate the Guidelines, consider reliable facts, and adequately explain its consideration of nonfrivolous arguments. *Gall v. United States*, 552 U.S. 38, 49–51 (2007); *Rita v. United States*, 551 U.S. 338, 356–57 (2007); *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (*en banc*).

## VII. The forfeiture judgment requires statutory findings.

The district court did not determine whether proceeds were governed by 18 U.S.C. § 981(a)(2)(A) or 18 U.S.C. § 981(a)(2)(B). Subsection (B) requires deduction of direct costs when lawful goods or services are provided in an illegal manner. The court also did not explain the $5,241,522.79 calculation or connect it to the offenses supporting the forfeiture. The judgment should be vacated or remanded for specific findings.

## VIII. The wire fraud convictions failed to show Bock's knowledge and intent.

The district court erred in allowing Bock's wire fraud convictions when the Government replaced proof of Bock's *mens rea* with evidence that she led FOF,

signed certifications, or occupied a position from which she might have discovered misconduct. 18 U.S.C. § 1343 requires proof of intent to defraud, participation in a scheme to defraud, and use of a wire in furtherance of that scheme. *United States v. Garbacz*, 33 F.4th 459, 467–69 (8th Cir. 2022); *United States v. McKanry*, 628 F.3d 1010, 1017 (8th Cir. 2011) require proof of the defendant's personal *mens rea*. *Neder v. United States*, 527 U.S. 1, 25 (1999) requires materiality. In this case, Bock's actions lacked evidence of intent to defraud MDE or the federal government.



Appellate Case: 26-2234 Page: 28 Date Filed: 08/21/2026 Entry ID: 5674871

## ARGUMENT

### I. THE FEDERAL-PROGRAMS-BRIBERY CONVICTIONS CANNOT STAND BECAUSE THE JURY WAS PERMITTED TO CONVICT WITHOUT FINDING A PRE-ACT *QUID PRO QUO* FOR IDENTIFIED FUTURE SPONSORSHIP CONDUCT.

**Standard of Review**

This Court reviews the legal meaning of a criminal statute and the legal accuracy of jury instructions *de novo*; the district court's formulation of instructions is otherwise reviewed for abuse of discretion. *United States v. Lozier*, 118 F.4th 1053, 1056 (8th Cir. 2024). Sufficiency of the evidence is reviewed *de novo*, viewing the evidence in the light most favorable to the verdict and asking whether a reasonable jury could find every statutory element beyond a reasonable doubt. *United States v. Broeker*, 27 F.4th 1331, 1335 (8th Cir. 2022). Sufficiency is measured against the elements of the offense as correctly defined by law, not an erroneously permissive instruction. *Musacchio v. United States*, 577 U.S. 237, 243–44 (2016).

Bock preserved the post-*Snyder* theory before trial and renewed it in her Rule 29 motion and post-verdict motions. (R. Docs. 327, 626 at 13–17; TR., vol. XVI, pp. 3679–80; R. Doc. 756 at 15–20).

### A. *Snyder* makes the timing of the corrupt bargain decisive: § 666 punishes bribes, not rewards agreed upon after the relevant conduct.

*Snyder v. United States* resolved the question at issue. Section 666 "is a bribery statute and not a gratuities statute." 603 U.S. 1, 5–6 (2024). A bribe is a payment "made or agreed to before an official act in order to influence the official with respect to that future official act." *Id*. at 5. Gratuity is an after-the-act reward. *Id*. at 5–6. And "the timing of the agreement is the key, not the timing of the payment." *Id*. at 18–19. Thus, payment delivered later may still be a bribe, but only if the corrupt bargain preceded the future conduct it was intended to influence. *Id*. at 19.

That holding abrogated the Eighth Circuit's pre-*Snyder* rule that § 666 also covered gratuities. *See United States v. Zimmermann*, 509 F.3d 920, 927 (8th Cir. 2007), abrogated by *Snyder*, 603 U.S. 1. After Snyder, the Government cannot prove § 666 bribery by showing only that value changed hands after favorable conduct and inviting the jury to treat the payment as a reward. It must prove an ex-ante exchange.

*United States v. Suhl*, 885 F.3d 1112–13 supplies the useful limiting principle without importing *McDonnell v. United States*, 579 U.S. 550, 569–72 (2016)'s technical definition of "official act" into § 666. The Eighth Circuit declined to decide whether § 666 incorporates that defined term but treated it as sufficient instructions requiring the payment to be given in return for "some specific act (or omission) or course of action (or inaction)." *United States v. Suhl*,

885 F.3d 1106, 1113–14 & n.5 (8th Cir. 2018). *Snyder* now adds a temporal requirement: the corrupt exchange must form before the future act or course of action that constitutes the *quo*.

**B. The Count 40 instruction allowed an existing sponsorship relationship to supply the *quo* simply because it continued after the payment.**

The undisputed chronology is fatal to the verdict. FOF began sponsoring the Safari/Cosmopolitan operation through an April 2020 site application. (Gov't Ex. B-4 at 9). The $310,000 check to Bock was dated August 13, 2021—about sixteen months later. (Gov't Ex. S-11). The Government's proof that the transaction was suspicious—the absence of a daycare license and enrolled customers, the purchase agreement and deposit, and FOF's $476,000 payment to Cosmopolitan the day before—may bear on the nature of the payment. (R. Doc. 756 at 15–18; Gov't Exs. HH-26, S-11, S-12, Z-40). It does not establish when a corrupt agreement arose or what future sponsorship Bock agreed to provide in exchange.

The jury instruction ignored the gap. At the Government's request, Count 40 defined the future conduct as "sponsoring or continuing to sponsor Cosmopolitan Business Solutions' fraudulent participation." (TR., vol. XXI, pp. 5005–06; R. Doc. 419 at 103). "Continuing to sponsor" is not tied to a particular future decision, omission, or bounded course of action. Every existing sponsorship necessarily "continues" until it ends. Under that formulation, a payment made sixteen months into an existing relationship can always be recast as payment for



Appellate Case: 26-2234 Page: 31 Date Filed: 08/21/2026 Entry ID: 5674871

the next day, the next claim, or the next month of continuation—without the jury ever deciding when the bargain was made or what future conduct was bought.

That is precisely where *Snyder* draws the line. The Government may prove an implicit *quid pro quo* circumstantially; it need not produce a written contract. But an implicit bargain is still a bargain, and *Snyder* makes its timing dispositive. A jury cannot infer the required chronology merely because the relationship continued after money changed hands. Otherwise, the later payment itself becomes evidence that a prior agreement must have existed, collapsing bribery back into the gratuity offense *Snyder* rejected.

## C. The separate "corruptly" definition reinforced the legally invalid reward theory, and the error was not harmless.

The jury instructions pulled in opposite directions. The court correctly told the jury, in general terms, that only bribes violate § 666 and that bribes are payments made or agreed to before the future act. (TR., vol. XXI, pp. 5000–01). But for Count 40, it separately defined "corruptly" to include acting "at least in part in return for being influenced or induced to cause or as a reward for causing" FOF's sponsorship. (Id. at 5005-06)(*emphasis added*). Read together with "continuing to sponsor," that language permitted the jury to treat a payment rewarding an already-existing sponsorship relationship as corrupt so long as sponsorship continued afterward.

That alternative is legally invalid after *Snyder*. *Boyle* recognizes the distinction between a merely evidentially unsupported theory—which jurors can reject—and a legally erroneous theory—which they are not equipped to identify. *United States v. Boyle*, 700 F.3d 1138, 1143 (8th Cir. 2012) (discussing *Yates v. United States*, 354 U.S. 298, 312 (1957), and *Griffin v. United States*, 502 U.S. 46, 59 (1991)). The verdict therefore cannot be sustained by assuming that the jury disregarded the "reward" route and instead found a properly timed *quid pro quo*.

Nor is the error harmless beyond a reasonable doubt. *See Neder v. United States*, 527 U.S. 1, 15–19 (1999). The omitted or misdescribed point—whether Bock entered a corrupt bargain before identified future sponsorship conduct—was contested. It was the defense theory. The record materials cited by the Government show a disputed $310,000 payment and an existing sponsor relationship; they do not compel a finding, beyond a reasonable doubt, that the parties had already agreed to exchange that payment for identified future sponsorship conduct. Because the temporal *quid pro quo* separates the § 666 bribe from the noncriminal gratuity, the Court cannot say the jury necessarily made the finding *Snyder* requires.

**D. Count 40's instruction error was prejudicial.**

A general verdict cannot be sustained when the jury was permitted to rely on a legally invalid theory. *United States v. Boyle*, 700 F.3d 1138, 1143 (8th Cir.

2012). The jury may have found only that the payment rewarded prior sponsorship or was connected to an existing relationship. *Snyder* foreclosed that theory. *Snyder*, 603 U.S. at 5, 18–19; *Suhl*, 885 F.3d at 1113–14 & n.5. The chronology is that sponsorship began in April 2020, and the $310,000 payment came in August 2021.

The Government offered substantial evidence attacking the legitimacy of the daycare transaction, but suspicious character is not temporal proof. Nothing identified in the district court's post-verdict ruling fixes the formation of a corrupt bargain before a particular future sponsorship decision or sufficiently specific future course of sponsorship conduct. (R. Doc. 756 at 15–20). A jury may draw reasonable inferences, but it may not fill the decisive temporal gap by assuming that because a payment was corrupt, an antecedent bargain for future conduct must have existed.

Because the advance *quid pro quo* was disputed and central to the defense, the error was not harmless. Count 40 should be reversed. Count 15 should likewise be reversed to the extent the conspiracy verdict rested on an agreement to make an unlawful gratuity rather than an agreement to commit § 666 bribery.

### E. Count 15 cannot rest on a conspiracy to commit conduct that is not § 666 bribery.

Count 15 incorporated the § 666 bribery elements. (TR., vol. XXI, p. 4994). A conspiracy conviction requires proof that Bock knowingly joined an agreement to commit the underlying federal offense. *See United States v. Woodard*, 315 F.3d

1000, 1004 (8th Cir. 2003). After *Snyder*, an agreement to give or receive rewards only after sponsorship conduct has occurred is not an agreement to violate § 666. The conspiracy therefore had to involve an ex-ante exchange of value for future sponsorship conduct. The present record supports reversal at least to the extent the Count 15 verdict could rest on the same legally invalid "reward" or "continuing sponsorship" theory used for Count 40. The district court's post-verdict order treated the daycare transaction as part of the proof supporting Count 15 (R. Doc. 756 at 26). Because the general verdict does not reveal whether the jury found a *Snyder*-compliant ex ante bribery agreement or relied on the legally invalid reward theory, *Boyle's Yates/Griffin* distinction precludes presuming the lawful ground. *United States v. Boyle*, 700 F.3d 1138, 1143.

If this Court concludes that the evidence measured under *Snyder* was insufficient as to every bribery object attributed to Bock, the proper remedy is acquittal. *Burks v. United States*, 437 U.S. 1, 16–18 (1978). If the record would permit a properly instructed jury to find a *Snyder*-compliant conspiracy on some object, Count 15, nevertheless requires a new trial because the jury was authorized to convict on the legally invalid gratuity theory and the error was not harmless beyond a reasonable doubt. Vacating either bribery conviction also requires vacating the sentence and plenary resentencing on the remaining counts under the



Appellate Case: 26-2234 Page: 35 Date Filed: 08/21/2026 Entry ID: 5674871

sentencing-package doctrine. *Greenlaw v. United States*, 554 U.S. 237, 253 (2008); *United States v. McArthur*, 850 F.3d 925, 943 (8th Cir. 2017).

## II. THE $242.8 MILLION LOSS FINDING AND MATCHING RESTITUTION ORDER MUST BE VACATED BECAUSE THE GOVERNMENT PROVED GROSS PROGRAM PAYMENTS, NOT NET PECUNIARY HARM.

### Standard of Review

A sentence is procedurally erroneous when the district court incorrectly calculates the Guidelines range or relies on clearly erroneous facts. *Gall v. United States*, 552 U.S. 38, 51 (2007). This Court reviews the interpretation and application of the Guidelines *de novo*, and the underlying factual findings, for clear error. *United States v. Markert*, 732 F.3d 920, 932 (8th Cir. 2013); *United States v. Walker*, 818 F.3d 416, 422 (8th Cir. 2016). Restitution presents legal questions for *de novo* review, while the amount of loss is reviewed for clear error. *United States v. Matheny*, 42 F.4th 837, 845 (8th Cir. 2022).

Bock preserved the core dispute. She objected that the PSR treated gross reimbursements as losses, failed to credit the fair market value of services provided, relied on an unreliable methodology, and conflicted with the Government's own evidence. (R. Doc. 878 at 3-21). The district court ruled on those objections. (ST 24-28).



Appellate Case: 26-2234 Page: 36 Date Filed: 08/21/2026 Entry ID: 5674871

## A. The Government never converted gross reimbursements into Guidelines loss.

Section 2B1.1 does not equate money paid with loss. Actual loss is the pecuniary harm resulting from the offense, and the sentencing court may make a reasonable estimate only after the Government proves the factual basis for that estimate by a preponderance of reliable evidence. U.S.S.G. § 2B1.1(b)(1); id. *cmt.* n.3(C); *United States v. McKanry*, 628 F.3d 1010, 1019 (8th Cir. 2011). Estimation relaxes precision; it does not eliminate the requirement to measure economic harm.

*Markert* controls the methodological point. There, the Government treated the face amount of fraud-tainted transactions as actual loss without first proving the victim's net pecuniary harm. This Court rejected that approach, explaining that actual loss is a net-loss concept and that the Government may not treat the transaction amount as a loss and shift the burden to the defendant to disprove it. *United States v. Markert*, 732 F.3d 920, 931-33 (8th Cir. 2013). On remand, this Court again vacated the judgment because the Government persisted in using the transaction amount as its starting point without proving the victim's resulting economic loss. *United States v. Markert*, 774 F.3d 922, 925-27 (8th Cir. 2014).

The Government used the same shortcut here. It treats the entire $242 million that FOF received from the Federal Child Nutrition Program as a loss because Bock submitted applications, certified claims, and controlled FOF. (R. Doc. 875 at 17; Gov't Ex. X-1). Those facts may bear on responsibility for

fraudulent claims. They do not establish that every reimbursed dollar was pecuniary harm. The Government identified no calculation that separated fraudulent reimbursements from legitimate ones or subtracted the compensable value before labeling the entire payment stream as a loss.

Government Exhibit X-1 underscores the problem. It compiled FOF-sponsored claims totaling approximately $246 million, and the Government's witness Agent Jared Kary testified that the exhibit covered payments from 2018 through 2021. (TR., vol. IV, pp. 697-99). Yet at sentencing, the Government described the fraudulent activity as a 21-month scheme. (R. Doc. 875 at 4-5).

Relevant conduct may extend beyond the dates of counts, but only if the Government proves the necessary connection to the offense. *See* U.S.S.G. § 1B1.3(a)(2); *United States v. Boesen*, 541 F.3d 838, 850-51 (8th Cir. 2008). Government Exhibit X-1 established a universe of payments; it did not establish that every payment in that universe was fraudulent relevant conduct or net economic loss.

The Government also did not supply a reliable substitute methodology. The Government offered no claim-by-claim segregation, representative sampling, or supported fraud rate. *Compare Boesen*, 541 F.3d at 850-51 (affirming an estimate derived from an identified fraud rate and applied to relevant claims). Agent Kary testified that investigators did not account for documented food purchases because

they believed much of the food was a facade. (TR., vol. IX, p. 1921). That characterization does not identify which claims were fraudulent or quantify the value, if any, that the program received.

The uncertainty persisted at sentencing. When the parties addressed the discrepancy between Government Exhibit X-1's approximately $246 million total and the PSR's $242,807,755 figure, the court stated, "I'm not sure if it's on X1 or other exhibits," before accepting the Government's explanation. (ST 8-9). A 26-level enhancement required a finding that loss exceeded $150 million. U.S.S.G. § 2B1.1(b)(1)(N). The record shows that the sentencing figure began with aggregate program payments and never reliably converted those payments into net pecuniary harm. Under *Markert*, that is not enough.

**B. The court failed to apply the Guidelines' required credit for legitimate value.**

Section 2B1.1 requires a net-loss calculation. Loss must be reduced by the amount of money returned and by the fair market value of property returned and services rendered before detection. U.S.S.G. § 2B1.1 cmt. n.3(D)(i) (2025). The Eighth Circuit has enforced that rule directly: after estimating loss, the sentencing court must credit the fair market value of services rendered. *United States v. Liveoak*, 377 F.3d 859, 867 (8th Cir. 2004); *see also Markert*, 732 F.3d 920, 931–33 (requiring net rather than gross pecuniary loss).



Appellate Case: 26-2234 Page: 39 Date Filed: 08/21/2026 Entry ID: 5674871

Bock presented evidence that required inquiry. Her sentencing submission identified approximately $28 million to $33.1 million in food purchases reflected in records from fourteen vendors, including records obtained through Government subpoenas. (R. Doc. 878 at 6-9). She did not claim that the ingredient cost itself was the required credit. She argued that the records demonstrated substantial meal-service value and provided a basis for the court to estimate that value. The Government's own witness likewise acknowledged that "there's no question that some food was distributed." (R. Doc. 878 at 22).

The court did not apply the Guidelines' net-loss rule to that evidence. It began: "None of that was in the trial. So that's the first problem." (ST 27–28). To the extent the court treated the absence of the vendor records from the trial record as grounds for not considering them, that was a legal error. Sentencing is not confined to evidence admitted before the jury. *See* 18 U.S.C. § 3661; U.S.S.G. §§ 1B1.4, 6A1.3(a); *Pepper v. United States*, 562 U.S. 476, 488–90 (2011). The court could reject the records as unreliable, find an inadequate connection between purchases and reimbursed meals, or assign the evidence limited weight. But it had to evaluate reliable sentencing evidence bearing on the amount of net pecuniary harm.

The court's alternative reasons did not cure the problem. It faulted Bock for failing to connect food purchases to particular reimbursement claims and reasoned

that some genuine meal distribution could have helped "lend legitimacy" to the fraud. (ST 27–28). But the Government bore the burden of proving the amount of the loss supporting the enhancement by a preponderance of reliable evidence. *Liveoak*, 377 F.3d at 866–67; *Markert*, 732 F.3d at 932–33. Even if Bock bore a production burden as to claimed legitimate value, she produced contemporaneous vendor records and identified evidence of actual food distribution. The court could not then presume that every reimbursed dollar was lost unless Bock disproved loss claim by claim.

*United States v. Karie* illustrates the distinction. The Court affirmed use of total government payments there because the defendant "presented no evidence that he provided legitimate services or submitted legitimate bills" and offered no evidence differentiating legitimate from fraudulent billing. *United States v. Karie*, 976 F.3d 800, 804 (8th Cir. 2020). Bock did the opposite. She produced documentary evidence of millions of dollars in food purchases and pointed to testimony acknowledging that the food was distributed. *Karie* therefore does not authorize a gross-payment loss figure here; it shows why the competing evidence had to be adjudicated.

*Luna* reinforces the same economic principle in the context of restitution. There, this Court held that a fraud victim cannot recover amounts it would have had to pay for legitimate, compensable services regardless of the fraud, and



Appellate Case: 26-2234 Page: 41 Date Filed: 08/21/2026 Entry ID: 5674871

remanded because the district court failed to allow for that value. *United States v. Luna*, 968 F.3d 922, 929–30 (8th Cir. 2020). The Guidelines and the MVRA are distinct inquiries, but neither permits gross payments to substitute automatically for actual economic harm. *See Id.*; *Karie*, 976 F.3d at 805–06.

The error was therefore methodological, not merely evidentiary. The district court was free to reject Bock's proposed valuation after assessing reliability and connection. It was not free to accept gross reimbursements as the Government's loss figure while refusing to determine what legitimate value those reimbursements purchased. Because the court never performed the net-loss inquiry required by § 2B1.1, *Liveoak, and Markert*, the $242.8 million loss finding—and the 26-level enhancement built on it—cannot stand.

**C. The Guidelines error was not harmless.**

The level-43 cap is impermissible error. Bock reached offense level 45 only after the court applied the 26-level loss enhancement and other challenged enhancements. (ST 37). If loss and one or more additional enhancements fall, the operative offense level and advisory range change. The loss finding mattered beyond the arithmetic: the court stated that loss "drives much of the Guidelines" and relied on the extraordinary scale of the asserted fraud in imposing a 500-month sentence. (ST 24, 57).

That record forecloses harmless error. The Guidelines are sentencing courts' "starting point" and "anchor," so an erroneous range ordinarily creates a reasonable probability of a different outcome. *Molina-Martinez v. United States*, 578 U.S. 189, 198–200 (2016). The Eighth Circuit has held that an enhancement masked by the level-43 cap may still require resentencing if it could affect the court's § 3553(a) analysis. *United States v. Gomez-Diaz*, 911 F.3d 931, 937 & n.2 (8th Cir. 2018).

Here, the court did not find an alternative loss and did not state that it would have imposed the same sentence. Because the disputed $242.8 million figure shaped both the Guidelines calculation and the court's assessment of offense seriousness, the Government cannot show harmless error.

**D. The $242.8 million restitution order independently fails under the MVRA.**

Under the MVRA, the Government bears the burden of proving, by a preponderance of the evidence, the amount of loss sustained "as a result of the offense" by a victim "directly and proximately harmed" by the offense. 18 U.S.C. §§ 3663A(a)(2), 3664(e); *United States v. Chalupnik*, 514 F.3d 748, 754–55 (8th Cir. 2008). Restitution is therefore limited to actual, provable loss caused by Bock's criminal conduct. *United States v. Adejumo*, 848 F.3d 868, 871–72 (8th Cir. 2017); *United States v. Frazier*, 651 F.3d 899, 910–11 (8th Cir. 2011). Yet the district court simply carried the $242,807, 255 Guidelines figure into the restitution

calculation. (ST 28–29, 53–54). Government Exhibit X-1 included payments from 2018 through 2021, while the Government described a 21-month scheme. (TR., vol. IV, pp. 697–99; R. Doc. 875 at 4–5). A scheme conviction broadens restitution only to losses caused within the proven scheme; it does not dispense with causation. *United States v. Barrera*, 112 F.4th 614, 617–20 (8th Cir. 2024).

The same defect defeats the amount. Restitution cannot equate gross payments with loss when the victim received legitimate value. *United States v. Luna*, 968 F.3d 922, 929–30 (8th Cir. 2020). *United States v. Karie*, 976 F.3d 800, 804–06 (8th Cir. 2020), upheld total-payment restitution because the defendant produced no evidence of legitimate services or billing. Bock presented vendor records reflecting substantial food purchases and evidence of actual food distribution. (R. Doc. 878 at 6-9). The Government proved payments, not actual loss caused by Bock. The restitution order must be vacated. The Court should vacate the 26-level loss enhancement and remand for a new loss determination under the correct legal standards.

## III. THE OBSTRUCTION ENHANCEMENT MUST BE VACATED BECAUSE THE DISTRICT COURT DID NOT MAKE THE FINDINGS *DUNNIGAN* REQUIRES.

### Standard of Review

This Court reviews the district court's interpretation and application of U.S.S.G. § 3C1.1 *de novo* and its factual findings for clear error. *United States v.*



Appellate Case: 26-2234 Page: 44 Date Filed: 08/21/2026 Entry ID: 5674871

*Bruguier*, 961 F.3d 1031, 1033 (8th Cir. 2020). Bock preserved the issue by objecting to the enhancement. (R. Doc. 878 at 42-44; ST 34–36).

### A. The district court did not make the independent findings *Dunnigan* requires.

A perjury enhancement requires an independent finding that the defendant gave false testimony on a material matter with willful intent to deceive, rather than from confusion, mistake, or faulty memory. *United States v. Dunnigan*, 507 U.S. 87, 94–95 (1993). The findings need not be formulaic, and the Eighth Circuit will uphold even concise findings if the record shows an independent determination that encompasses those predicates. *United States v. Myore*, 134 F.4th 1000, 1012–13 (8th Cir. 2025); *United States v. Bruguier*, 961 F.3d 1031, 1033–34 (8th Cir. 2020). But § 3C1.1 cannot rest merely on the jury's rejection of the defendant's testimony. *Bruguier*, 961 F.3d at 1033; *United States v. Gomez-Diaz*, 911 F.3d 931, 936–37 (8th Cir. 2018).

The findings here did not encompass all *Dunnigan*'s predicates. As to FOF's claims-review process, the court reasoned that none of the described monitoring and investigation "was in the trial" and that Bock knew it. (ST 35). Absence of corroboration does not establish that identified testimony was false, material, and deliberately false. *Dunnigan* requires an independent finding of perjury, not an inference from disbelief. *Dunnigan*, 507 U.S. 87, at 95.



Appellate Case: 26-2234 Page: 45 Date Filed: 08/21/2026 Entry ID: 5674871

The remaining findings were similarly broad. The court deemed Bock's "entire testimony" about the childcare-center transaction false and her "entire testimony" concerning Empress Watson willfully false. (ST 35). Those conclusions did not identify the material falsehoods or explain why the disputed accounts reflected deliberate deception rather than mistake or differing recollection. The board-member finding was more specific, but the court did not determine that it independently satisfied falsity, materiality, and willfulness, or that it alone warranted the enhancement. (ST 34–35).

*Bruguier* shows the difference. There, the court identified concrete denials, found them material, and expressly found that they were willfully false rather than products of confusion, mistake, or faulty memory. 961 F.3d at 1033–34. Because the findings here did not make the comparable determination *Dunnigan* requires, the § 3C1.1 enhancement should be vacated.

**B. The Government's changed theory underscores why the required findings were never developed.**

The PSR and the Government's sentencing memorandum sought to establish obstruction based on FOF's litigation against MDE. (R. Doc. 875 at 17–18; R. Doc. 878 at 42). At sentencing, however, the Government expressly stated that it was "not adopting a specific view as to whether or not Ms. Bock's testimony constituted perjury." (ST 11). The court then set aside the lawsuit theory and imposed § 3C1.1 based on trial testimony. (ST 34–35).

That procedural history does not bar the court from considering perjury, but it explains the absence of a developed perjury record: the Government did not identify statement by statement what testimony was false, why it was material, or what evidence established willful deception. The district court therefore announced broad conclusions rather than the independent findings *Dunnigan* requires. Section 3C1.1 may be imposed on a defendant who commits perjury; it may not be imposed merely because the court rejects the defendant's testimony. *Gomez-Diaz*, 911 F.3d at 936–37.

**C. The error was not harmless.**

The level-43 cap does not establish harmless error. *Gomez-Diaz* confirms that an obstruction error is not harmless merely because the Guidelines cap masks its numerical effect. The Eighth Circuit vacated despite the same capped offense level, explaining that harmlessness also turns on whether the enhancement could have affected the court's § 3553(a) analysis. *United States v. Gomez-Diaz*, 911 F.3d 931, 936–37 & n.2 (8th Cir. 2018). Here, the district court later relied on the same perceived dishonesty, calling Bock the "opposite of remorse," when imposing a 500-month sentence. (ST 57). The challenged perjury finding therefore mattered beyond Guidelines arithmetic.

The cap is also unlikely to apply after this appeal. If Bock prevails on the loss or other enhancement issues, removing § 3C1.1 can further reduce the

advisory range. Because the Guidelines are the sentencing court's "starting point" and "anchor," an erroneous range ordinarily creates a reasonable probability of a different outcome. *Molina-Martinez v. United States*, 578 U.S. 189, 198–200 (2016). Unlike cases finding harmless error based on an express alternative sentence, the court did not find that it would impose the same 500-month sentence without the obstruction enhancement. The § 3C1.1 enhancement should therefore be vacated, and the case remanded for resentencing under the findings required by *Dunnigan*.

## IV. THE FOUR-LEVEL INCREASE RESTS ON TWO LEGAL ERRORS: THE GOVERNMENT DID NOT PROVE THE CHARITABLE MISREPRESENTATION § 2B1.1(b)(9)(A) REQUIRES OR THE STAFFORD ACT NEXUS REQUIRED BY § 2B1.1(b)(12).

**Standard of Review**

This Court reviews the application of the Guidelines and sentencing enhancements *de novo* and factual findings for clear error. *United States v. Foard*, 108 F.4th 729, 736 (8th Cir. 2024). The Government bears the burden of proving an enhancement by a preponderance of the evidence. *Id*. Bock preserved both objections. (R. Doc. 878 at 38-40; ST 31–32).

### A. Section 2B1.1(b)(9)(A) requires the specified charitable-purpose misrepresentation, not merely fraud committed through a nonprofit.

Section 2B1.1(b)(9)(A) adds two levels when the offense involved "a misrepresentation that the defendant was acting on behalf of" a charitable

organization. Application Note 8(B) confirms that the enhancement may reach a genuine officer of a genuine charity—but only when the defendant represents that she is obtaining a benefit for the organization while actually intending to divert all or part of that benefit. U.S.S.G. § 2B1.1 cmt. n.8(B). The text and commentary therefore require more than proof that a nonprofit officer committed fraud.

The district court found that Bock's reimbursement requests falsely represented that she acted for a charity when, "[i]n reality, she was acting on behalf of a fraud scheme." (ST 31). That finding identifies the underlying fraud, not the additional misrepresentation the Guideline specifies. FOF existed; Bock was its executive director; and FOF was an approved program sponsor. The Government's sentencing theory focused on false meal claims, nonexistent children, false certifications, kickbacks, and diversion of funds. (R. Doc. 875 pp. 4–13, 17). Those facts may prove fraud, but they do not by themselves prove that an identified request represented a benefit obtained for FOF while Bock intended to divert that benefit.

The Government's memorandum likewise recited the Guidelines' conclusion without identifying the qualifying representation or the contemporaneous diversion intent. (R. Doc. 875 at 17). Because the Government bore the burden, *Foard*, 108 F.4th at 736, the enhancement cannot be sustained by treating fraud through a

nonprofit as automatically equivalent to charitable-purpose misrepresentation. The two-level increase should be vacated.

**B. Section 2B1.1(b)(12) required proof that the reimbursements were paid "in connection with" a Stafford Act declaration.**

Section 2B1.1(b)(12) applies when the offense involved conduct described in 18 U.S.C. § 1040. Section 1040 reaches fraud involving a federal benefit "authorized, transported, transmitted, transferred, disbursed, or paid in connection with" a Stafford Act major-disaster or emergency declaration. 18 U.S.C. § 1040(a), (d)(1). The required connection to the declaration is a distinct statutory element. *United States v. Olsen* illustrates the point. 760 F.3d 825, 826–27 (8th Cir. 2014). After a tornado, a presidential disaster declaration authorized FEMA disaster assistance, and *Olsen* sought it. (Id. at 826). The Court separately required proof that "the benefit was in connection with the Disaster Declaration." (Id. at 827). *Olsen* does not hold that a declaration must create the benefit, but it confirms that the Stafford Act nexus must be proved, not assumed.

Child and Adult Care Food Program ("CACFP") and Summer Food Service Program ("SFSP") were longstanding programs created by 42 U.S.C. §§ 1761 and 1766. Congress responded to COVID-19 by authorizing USDA to waive requirements governing those programs. Families First Coronavirus Response Act, Pub. L. No. 116-127, § 2202, 134 Stat. 178, 185–86 (2020). The district court sustained the enhancement because COVID-19 prompted the waivers. (ST 32). But

an emergency-related waiver is not itself a finding that each reimbursement was authorized, transferred, disbursed, or paid "in connection with" a Stafford Act declaration.

The Government therefore had to prove the statutory nexus between the declaration and the benefits supporting the enhancement. On the findings expressed here, it did not. No published Eighth Circuit decision identified in this review extends § 1040 to an otherwise permanent benefit program solely because emergency waivers altered its operating rules. *Olsen* involved the materially different circumstance in which the declaration enabled the FEMA assistance the defendant sought. 760 F.3d at 826–27. The second two-level increase should be vacated.

## V. THE GOVERNMENT'S INVESTIGATIVE OPINIONS DEPRIVED BOCK OF A FAIR TRIAL, AT LEAST ON THE BRIBERY COUNTS.

### Standard of Review

Preserved evidentiary rulings are reviewed for abuse of discretion. *United States v. Dierks*, 978 F.3d 585, 591 (8th Cir. 2020). Unpreserved claims are reviewed for plain error. *United States v. Olano*, 507 U.S. 725, 732–36 (1993). Cumulative error warrants reversal when "the case as a whole presents an image of unfairness resulting in the deprivation of the defendant's constitutional rights." *United States v. Timberlake*, No. 25-1351, slip op. at 6 (8th Cir. Mar. 20,



Appellate Case: 26-2234 Page: 51 Date Filed: 08/21/2026 Entry ID: 5674871

2026)(quoting *United States v. Baldenegro-Valdez*, 703 F.3d 1117, 1124–25 (8th Cir. 2013)).

**A. Investigators repeatedly supplied the conclusion the jury had to draw.**

Rule 701 of the Federal Rules of Evidence permits lay opinion only when it is rationally based on the witness's perception, helpful to the jury, and not grounded in specialized knowledge. Fed. R. Evid. 701. In *United States v. Peoples*, the Eighth Circuit ordered a new trial because an FBI agent used an investigation to place a "narrative gloss" on recorded conversations and effectively supplied the Government's interpretation of the case. 250 F.3d 630, 640–42 (8th Cir. 2001). *United States v. Dierks* reaffirmed that distinction: an officer may explain matters grounded in personal perception or ordinary knowledge but may not use lay opinion to synthesize an investigation and tell the jury what disputed evidence means. 978 F.3d at 592–93.

That line was crossed repeatedly. Agents called meal counts "fake, inflated," a roster fake because "agents did research," checks "kickback payments," and entities "shell companies . . . used . . . to facilitate this fraud scheme." (TR., vol. VI, pp. 1152, 1173; vol. VII, pp.1527, 1544–45). Most directly, over a defense objection, Agent Travis Wilmer testified: "This is a kickback payment . . . and is charged as one of the counts." (TR., vol. XII, p. 2785).

The district court itself recognized the problem. After Agent Travis Wilmer offered a conclusory characterization, the court struck the answer and directed the prosecutor to "avoid the conclusory statements that tend to be legal conclusions." (TR., vol. XII, pp. 2811–13). Yet the Government's forensic accountant later testified that transactions "fit the pattern of a kickback," that she "conclude[d]" they fit that pattern, and that another transaction "was a kickback." (TR., vol. XIII, pp. 3058–59; vol. XIV, p. 3097).

*Dierks* is the contrast. There, the officer merely explained common internet abbreviations and did not provide a "narrative gloss" on the Government's case. 978 F.3d at 592–93. Here, investigators repeatedly supplied the contested label "kickback," creating the precise danger *Peoples* identified: jurors may give an FBI agent's conclusions "undue weight" and substitute the agent's judgment for their own. 250 F.3d at 641–42.

**B. The error was especially prejudicial on Counts 15 and 40.**

The improper opinions went directly to the disputed issue on the bribery counts. After *Snyder*, the question was not merely whether money changed hands, but whether Bock entered into a corrupt exchange for future sponsorship conduct. *Snyder*, 603 U.S. 1, 5, 18–19. Yet Government witnesses repeatedly told the jury that the disputed transfers were "kickbacks," including the express statement that one "is charged as one of the counts." (TR., vol. XII, p. 2785). That

characterization supplied the Government's answer to the inference the jury had to draw for itself.

Cumulative error warrants reversal when "the case as a whole presents an image of unfairness that has resulted in the deprivation of a defendant's constitutional rights," even if no individual error independently requires reversal. *United States v. Riddle*, 193 F.3d 995, 998 (8th Cir. 1999).

Here, a pattern of repeated, prosecution-sponsored legal conclusions and credibility attacks supplied the Government's theory on the very issues the jury had to decide—knowledge, corrupt intent, and whether the $310,000 transaction was a bribe. The court itself recognized that conclusory legal characterizations had crossed the line, yet materially similar testimony persisted. Those opinions addressed the character of the payments at the center of Counts 15 and 40.

Because those investigative conclusions addressed the decisive issue in Counts 15 and 40, the error was not harmless. This Court should vacate those counts and remand for a new trial.

## VI. THE 500-MONTH SENTENCE MUST BE VACATED BECAUSE THE COURT SENTENCED FROM ERRONEOUS GUIDELINES ANCHOR AND DID NOT ADDRESS BOCK'S NATIONAL-DISPARITY SHOWING.

### Standard of Review

This Court first determines whether the district court committed significant procedural error and then, if necessary, reviews substantive reasonableness for

abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). Procedural error includes an incorrect Guidelines calculation, selection of a sentence based on clearly erroneous facts, and failing to adequately explain the chosen sentence. *Id.* A sentence is substantively unreasonable when the court fails to consider a relevant factor deserving significant weight, gives significant weight to an improper factor, or commits a clear error of judgment in balancing the proper factors. *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009).

### A. The $242.8 million loss figure anchored both the Guidelines calculation and the court's § 3553(a) analysis.

Argument II explains why the $242,807,755 figure cannot stand as the Guidelines loss. The error did not stop at § 2B1.1. The district court acknowledged that loss "drives much of the guidelines." (ST 24). It later described the offense as "one of the largest frauds with the most far-reaching implications that this state has ever seen." (ST 57). The Government likewise urged 600 months based on the "$242 million breadth of harm." (ST 49). Thus, the same disputed number supplied both the dominant Guidelines enhancement and a central rationale for the ultimate sentence.

That is precisely why the accuracy of Guidelines matters. The Guidelines are the sentencing court's "starting point" and "anchor," and an erroneous range ordinarily creates a reasonable probability of a different outcome because it alters the framework within which the court exercises discretion. *Molina-Martinez,* 578

U.S. 189, 198–200. A sentence below the erroneous range does not make the mistake harmless; the error may still affect the court's choice of sentence. *Id.* at 200–01.

Here, the record makes the anchoring effect express rather than inferential. If the $242.8 million figure measured gross reimbursements rather than legally cognizable loss, the district court began from an overstated range and then reused the same overstated magnitude to assess seriousness under § 3553(a). Resentencing is required if Argument II succeeds.

**B. The court did not address Bock's specific national-disparity argument under § 3553(a)(6).**

Bock also presented a concrete argument about national disparities, not a generalized plea for leniency. Section 3553(a)(6) requires consideration of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Her sentencing submission relied on ten years of Sentencing Commission data covering 40,543 § 2B1.1 defendants and then narrowed the comparison to the Guidelines variables driving her case. According to that submission, all 88 defendants at offense level 43 received below-Guidelines sentences, with a median of 12.2 years; defendants in Bock's asserted loss range had a median sentence of approximately eleven years (R. Doc. 878 at 49-54).

Those statistics did not dictate a sentence. But they squarely presented the statutory question of whether 500 months of imprisonment created an unwarranted national disparity for a Criminal History Category I fraud defendant sentenced under § 2B1.1. The Supreme Court has held that when a party presents a nonfrivolous argument for a different sentence, the sentencing judge ordinarily should explain why the argument was rejected sufficiently to permit meaningful appellate review. *Rita v. United States*, 551 U.S. 338, 356–57 (2007). *Gall* likewise requires an explanation adequate to show that the court considered the parties' arguments and had a reasoned basis for the sentence selected. 552 U.S. at 50.

The court addressed several defense themes during sentencing, including Bock's responsibility, MDE, and another sponsor. (ST 52–57). But the explanation identified in this record does not address the substance of the national Sentencing Commission data. That omission is consequential because the data was offered for the precise purpose § 3553(a)(6) identifies: national sentencing consistency among similarly situated defendants. The argument did not require acceptance. It required consideration and an explanation sufficient for appellate review. *Rita*, 551 U.S. at 356–57.

### C. The combined procedural errors require resentencing under a correct framework.

This Court need not decide what sentence Bock should receive. It requires only a lawful sentencing process. If Argument II is correct, the court started from

an erroneous Guidelines anchor and then carried the same overstated loss figure into § 3553(a). Independently, the court relied on alleged post-verdict defiance without findings resolving the factual premise. The sentencing explanation also does not show consideration of Bock's detailed national-disparity showing.

Each defect concerns the sentencing framework itself. *Gall* requires a correct Guidelines calculation, reliable factual predicates, and an adequate explanation. 552 U.S. at 50–51. *Molina-Martinez* confirms that an erroneous Guidelines anchor ordinarily affects the sentence. 578 U.S. at 198–200. *Richey* forbids reliance on unresolved disputed allegations. *United States v. Richey*, 758 F.3d 999, 1002–03 (8th Cir. 2014). And *Rita* requires a reasoned response to substantial, nonfrivolous mitigation arguments. 551 U.S. at 356–57. The Court should vacate the 500-month sentence and remand for resentencing under a correctly calculated Guidelines range, on established facts, and with meaningful consideration of Bock's § 3553(a)(6) argument.

## VII. THE $5.24 MILLION FORFEITURE JUDGMENT MUST BE VACATED BECAUSE THE COURT NEVER DETERMINED THE GOVERNING DEFINITION OF "PROCEEDS" OR APPLIED § 981(a)(2)(B).

**Standard of Review**

This Court reviews forfeiture findings for clear error and whether the facts render property forfeitable *de novo*. *United States v. Peithman*, 917 F.3d 635, 651 (8th Cir. 2019); *United States v. Garbacz*, 33 F.4th 459, 471–72 (8th Cir. 2022).

The Government must prove the amount subject to forfeiture by a preponderance. *Peithman*, 917 F.3d at 651. Bock preserved both the amount and the governing definition of "proceeds." (R. Doc. 878 at 33-36; ST 24).

### A. Section 981(a)(2)(B) required the court to determine the statutory measure of proceeds before fixing the money judgment.

The Government proceeded under 18 U.S.C. § 981(a)(1)(C), through 28 U.S.C. § 2461(c). Section 981(a)(1)(C) reaches property constituting or derived from "proceeds traceable to" specified unlawful activity. Congress then defined "proceeds" differently depending on the transaction. Section 981(a)(2)(A) generally uses gross proceeds for illegal goods, illegal services, and unlawful activities. Section 981(a)(2)(B), by contrast, applies when lawful goods or services are provided in an illegal manner and defines proceeds as the amount acquired through the transaction "less the direct costs incurred in providing the goods or services." 18 U.S.C. § 981(a)(2)(B).

Bock squarely invoked subsection (B). She argued that FOF was an actual CACFP/SFSP sponsor, that legitimate food and meal-service activity occurred alongside the fraud alleged by the Government, and that documented expenditures bore on direct costs. (R. Doc. 878 at 34-35; 3–4). Whether those expenditures ultimately qualify as direct costs is a factual question. The antecedent legal question was which definition of proceeds governed. The district court never answered it. (ST 24).

*Gregoire* confirms that the distinction is real. In a mail-fraud forfeiture under § 981, the Eighth Circuit affirmed forfeiture of gross eBay revenues because the defendant introduced no evidence of direct costs, expressly citing § 981(a)(2)(B). *United States v. Gregoire*, 638 F.3d 962, 972 (8th Cir. 2011). Here, Bock did identify evidence offered to establish direct costs. The court could reject that proof as insufficient or unrelated; it could not skip the statutory inquiry and enter a gross figure without deciding whether subsection (B) applied.

The Government may argue that fraudulent reimbursement claims constitute wholly unlawful activity under subsection (A). That may be its answer, but it is not a substitute for the finding. The record involved an existing nonprofit sponsor that provided lawful nutrition program services while allegedly submitting fraudulent claims. Because subsections (A) and (B) produce different measures of proceeds, the court had to select the governing rule before entering judgment.

**B. The $5,241,522.79 judgment also lacks findings showing how the amount constituted traceable proceeds.**

Rule 32.2 required the court to determine the amount of money judgment, and *Peithman* required the Government to prove that amount by a preponderance of evidence. Fed. R. Crim. P. 32.2(b)(1)(A). *Peithman*, 917 F.3d at 651. *Garbacz* likewise requires a sufficient nexus between the property and the offense; it affirmed forfeiture where the Government traced the proceeds of fraud into specific property. 33 F.4th at 471–73.

Here, the $5,241,522.79 figure combined materially different categories, including approximately $3.5 million from FOF's operating account, the disputed $310,000 payment, and other alleged receipts. (ST 15–17, 22). Bock disputed both the legal measure and the amount. Yet the court did not identify the transactions comprising the judgment, whether § 981(a)(2)(A) or (B) governed, or explain why the entire amount qualified as proceeds under that definition. (ST 24). Without those findings, meaningful review of the lump-sum judgment is impossible.

**C. *Honeycutt* is preserved, but current Eighth Circuit law makes § 981(a)(2)(B) the stronger ground for relief.**

Bock preserves her argument that *Honeycutt v. United States*, 581 U.S. 443, 449–54 (2017), should limit § 981(a)(1)(C) forfeiture to proceeds personally acquired. But *Peithman* held that *Honeycutt* does not govern § 981(a)(1)(C), 917 F.3d at 652–53, and *United States v. Asomani*, 7 F.4th 749, 752–56 (8th Cir. 2021), treats *Peithman* as controlling. This Court need not revisit that issue. The independently preserved § 981(a)(2)(B) question and the absence of an identifiable proceeds' calculation require remand under existing Eighth Circuit law.

The Court should vacate the $5,241,522.79 forfeiture judgment and remand for the district court to identify the transactions constituting proceeds traceable to offenses that remain valid after appeal, determine whether § 981(a)(2)(A) or § 981(a)(2)(B) governs those proceeds, and, if subsection (B) applies, determine



Appellate Case: 26-2234 Page: 61 Date Filed: 08/21/2026 Entry ID: 5674871

the direct costs proved. Any amount dependent on Counts 15 or 40 must also be reconsidered if those convictions are vacated. *See Garbacz*, 33 F.4th at 471–73.

## VIII. THE GOVERNMENT FAILED TO PROVE BOCK'S PERSONAL KNOWLEDGE AND INTENT TO DEFRAUD.

The wire-fraud convictions (Counts 1, 2, 4, 5, 12) cannot stand because the Government proved, at most, that certain FOF sites submitted false information. It did not prove beyond a reasonable doubt that Bock knew the charged representations were false, knowingly joined a fraudulent scheme, or used the charged wires with intent to defraud.

**Standard of Review**

This Court reviews a preserved sufficiency challenge *de novo*, viewing the evidence in the light most favorable to the verdict and drawing reasonable inferences in the Government's favor. *United States v. Garbacz*, 33 F.4th 459, 467 (8th Cir. 2022). But the Court will reverse when no reasonable jury can find guilt beyond a reasonable doubt. *Id.*; *United States v. Johnson*, 745 F.3d 866, 869 (8th Cir. 2014).

Section 1343 requires proof of three elements: (1) intent to defraud; (2) participation in a scheme to defraud; and (3) use of an interstate wire in furtherance of that scheme. 18 U.S.C. § 1343; *Garbacz*, 33 F.4th 459, 467–68 (8th Cir. 2022). The Government also must prove a material falsehood. *Neder v. United States*, 527 U.S. 1, 25 (1999). A sufficiency challenge must be measured against those



Appellate Case: 26-2234 Page: 62 Date Filed: 08/21/2026 Entry ID: 5674871

required elements, not against conduct that merely appears suspicious or may have contributed to an organization's regulatory violations. *Musacchio v. United States*, 577 U.S. 237, 243–44 (2016). Bock preserved this objection. (R. Doc. 626 at 9-13).

## A. Evidence of site-level fraud did not establish Bock's knowing participation.

The evidence may have shown that some participating sites and vendors falsified meal counts, attendance rosters, invoices, or related records. However, that evidence does not establish that Bock knew the information was false when FOF submitted claims to the MDE. FOF operated as an intermediary. Site operators generated the underlying information; FOF submitted reimbursement claims; and FOF distributed the resulting funds. The Government therefore had to prove more than that false information passed through FOF's administrative system. *United States v. Wrehe*, 628 F.2d 1079 (8th Cir. 1980); *United States v. Pizano*, 421 F.3d 707 (8th Cir. 2005). It had to prove that Bock personally knew the charged representations were false and nevertheless used the wires to obtain money by deception. It did not. (Gov't Ex. V38, p. 1); see also (TR., vol. XVIII, pp. 4002-05).

The charged communications (R. Doc. 1, Counts 1, 2, 4, 5, 12) do not supply the missing proof. They show, at most, that Bock performed duties associated with FOF's sponsor function. They do not establish that she:

- created false meal counts or attendance records;
- fabricated invoices or supporting documents;
- directed sites to submit false information;
- knew that particular site records were inaccurate; or
- joined the sites' fraudulent objective.

(TR., vol. X, p. 2221; TR., vol. X11, pp. 2619, 2628, 2643; TR., vol. VIII, p 1654; TR., vol. IX, p. 1928).

**B. The sponsor certification established administrative responsibility—not deliberate falsity.**

The Government relied substantially on evidence such as Bock/FOF certifications in Government's Exhibits V-38 and V-39. But the certification does not establish that Bock personally counted meals, prepared rosters, generated invoices, or independently verified every site-level entry. (TR., vol. XVIII, p. 4003). It reflects FOF's responsibility to ensure that claims were accurate and that supporting records were maintained. Its warning concerning deliberate misrepresentation underscores the difference between intentional fraud and inadequate oversight.

The distinction between organizational involvement and personal criminal intent is critical. A wire-fraud conviction cannot rest solely on the fact that a defendant led an organization through which another person's false information

was transmitted. Unlike the case at hand, each use of a wire must further the fraudulent scheme, but the wire itself does not prove the defendant's knowledge or intent. *United States v. Garbacz*, 33 F.4th 459, 467–69 (8th Cir. 2022); *United States v. McKanry*, 628 F.3d 1010, 1017 (8th Cir. 2011). The Government could not convert Bock's signature into conclusive proof that she knew records were fabricated. At most, the certification supports an inference that Bock understood FOF's administrative obligations. It does not prove that she knew a specific representation in a charged wire was false when transmitted.

**C. The circumstantial evidence showed potential compliance problems, not knowledge of the charged falsities.**

The Government may rely on circumstantial evidence to prove intent, but the inference must be reasonable and tied to the charged conduct. Suspicious program growth, unusually high meal counts, complaints, inconsistent information, or communications with MDE may show that Bock faced compliance risks. They do not necessarily establish that she knew the representations underlying Counts 1, 2, 4, 5, and 12 of the indictment were false when the wires were used. Bock managed FOF. She had organizational responsibility. This does not prove she knew the sites' records were false.

The Eighth Circuit's sufficiency cases reinforce that the question is whether the evidence permits a reasonable jury to find every element beyond a reasonable doubt, not whether the evidence supports a generalized suspicion of wrongdoing.



Appellate Case: 26-2234 Page: 65 Date Filed: 08/21/2026 Entry ID: 5674871

*United States v. Garbacz*, 33 F.4th 459, 467 (8th Cir. 2022); *United States v. Proffit*, 49 F.3d 404, 406 (8th Cir. 1995).

### D. The convictions cannot rest on supervisory or organizational liability.

The Government's theory follows this chain: the claims were false; FOF submitted them; Bock led FOF and signed certifications; therefore, Bock intended fraud. (TR vol. XXI, p. 4957). That reasoning substitutes position for *mens rea*. Federal fraud statutes do not impose vicarious criminal liability on a supervisor merely because misconduct occurred within the supervisor's organization. The Government had to prove Bock's own knowing participation in the scheme. *United States v. McKanry*, 628 F.3d 1010, 1017 (8th Cir. 2011). The same principle applies to any theory based on association with site operators or vendors: organizational affiliation does not establish agreement, knowledge, or intent. It does not establish that she deliberately transmitted materially false information. (TR., vol. III, pp. 542-544).

### E. Cooperating-witness testimony did not establish knowledge of the charged wires.

The Government relied on testimony that Bock encouraged Lul Ali to open additional sites, increase meal counts, and "make more money," and that Bock encouraged Ali to claim that a site served 1,300 meals per day. The Government also relied on testimony that Bock warned participants not to attract attention through conspicuous spending. (TR., vol. XII, p. 2722; TR., XXI, p. 4852; R. Doc.



Appellate Case: 26-2234 Page: 66 Date Filed: 08/21/2026 Entry ID: 5674871

756 at 6–8). That testimony may have permitted the jury to infer that Bock understood that some participants were engaged in wrongdoing. It did not necessarily establish that she knew the particular representations underlying the four charged emails were false when those emails were sent or received. The Government was required to prove more: It had to prove Bock's knowledge and intent as to the charged scheme and wires. 18 U.S.C. § 1343; *Garbacz*, 33 F.4th at 467–69.

The Government's evidence also supported competing inferences. Bock testified that she terminated sites she suspected of fraud. (TR. vol. XVII, pp. 3827–30). That evidence did not compel acquittal, but it weakened the claim that Bock knowingly intended to transmit false claims whenever she approved or processed FOF communications. On sufficiency review, the issue is not whether the Government's inference was possible; it is whether the evidence required a finding of guilt beyond a reasonable doubt. *United States v. Proffit*, 49 F.3d 404, 406 (8th Cir. 1995).

**F. Roberts is materially different.**

The likely Government's principal authority, *United States v. Roberts*, 881 F.3d 1049 (8th Cir. 2018), does not support affirmance here. *Roberts* confirms that intent may be proved circumstantially; it does not hold that a defendant's organizational position or association with false information establishes intent to



Appellate Case: 26-2234 Page: 67 Date Filed: 08/21/2026 Entry ID: 5674871

defraud. In *Roberts*, the evidence concerned the defendant's own conduct: materially inconsistent loan applications, false owner-occupancy representations, omitted liabilities, and undisclosed payments. *Roberts*, 881 F.3d at 1052–53.

Those facts directly tied Roberts to the charged misrepresentations and gave the jury a concrete basis to infer that he intended to deceive the lenders. This case lacks comparable evidence: Site operators generated the underlying meal counts, rosters, and invoices. The Government did not identify a charged representation that Bock personally created and knew was false. Much of the Government's proof concerned conduct by affiliated sites and vendors. The Government relied on Bock's position, certifications, and transmission of information supplied by others. (TR., vol. XXI, pp. 4833- 4834; TR., vol. IV, pp. 834, 840, 859). Thus, the relevant distinction is not between direct and circumstantial evidence. It is between circumstantial evidence of a defendant's personal fraudulent intent and evidence that merely establishes fraud within an organization. *Roberts* supports the former; it does not authorize the latter.

The evidence established, at most, that false information originated at certain sites and that FOF transmitted reimbursement claims. Bock terminated sites she suspected of fraud. (TR., vol. XVII, pp. 3827-3830). The Government did not establish beyond a reasonable doubt that Bock knew the charged representations were false or intended to deceive when the wires were used. The convictions



Appellate Case: 26-2234 Page: 68 Date Filed: 08/21/2026 Entry ID: 5674871

should be reversed, and judgments of acquittal should be entered or a new trial ordered.

## G. The Charged Emails Do Not Independently Establish *Mens Rea.*

The Government argued that the four charged emails were sent or received in furtherance of the scheme and that the jury was instructed that Bock need not personally contemplate using an interstate wire if such use was reasonably foreseeable. That instruction addresses the wire-use component. (TR., vol. XXI, pp. 4830-34). It does not eliminate the separate requirements of knowing participation and intent to defraud. The existence, interstate character, or foreseeable use of a wire cannot prove that Bock knew the underlying representations were false or intended to deceive MDE. *Garbacz*, 33 F.4th at 467–69; *United States v. McKanry*, 628 F.3d 1010, 1017 (8th Cir. 2011).

The Government proved, at most, that false information originated at certain sites and that FOF transmitted reimbursement claims. It did not prove that Bock knew the charged representations were false, knowingly joined the sites' fraudulent objective, or used the charged wires with intent to deceive. Because the Government's proof depended on organizational status, administrative responsibility, and generalized circumstantial evidence rather than evidence tying Bock personally to the charged falsities, the wire-fraud convictions cannot stand.



Appellate Case: 26-2234 Page: 69 Date Filed: 08/21/2026 Entry ID: 5674871

This Court should reverse Counts 1, 2, 4, 5, and 12 and direct entry of judgments of acquittal. Alternatively, the Court should order a new trial.

## CONCLUSION

For these reasons, Ms. Bock respectfully requests that this Court:

1. Reverse Counts 15 and 40 and remand for entry of judgments of acquittal;

2. Vacate Counts 1, 2, 4, 5, and 12 and remand for a new trial; and

3. Alternatively, vacate the sentence, restitution order, and forfeiture judgment and remand for resentencing and redetermination of restitution and forfeiture under the correct legal standards.

**KENNETH UBONG UDOIBOK, P.A.**

Date: August 21, 2026

By: /s/Kenneth U. Udoibok
Kenneth U. Udoibok (262523)
Flour Exchange Building, Suite 5010
310 Fourth Avenue South
Minneapolis, Minnesota 55415
Phone: 612-808-6031
*k@kenulaw.com*

**ATTORNEY FOR THE APPELLANT**

## CERTIFICATE OF COMPLIANCE AND OF VIRUS-FREE ELECTRONIC BRIEF

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 12,711 words, as determined by the word-count function of Microsoft Word.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

3. Pursuant to 8th Cir. R. 28A(h)(2), the undersigned certifies that the electronic version of this brief has been scanned for viruses and is virus-free.

Date: August 21, 2026

**KENNETH UBONG UDOIBOK, P.A.**

By: /s/Kenneth U. Udoibok
Kenneth U. Udoibok (262523)
Flour Exchange Building, Suite
5010 310 Fourth Avenue South,
Minneapolis, Minnesota 55415
Phone: 612-808-6031
*k@kenulaw.com*

**ATTORNEY FOR THE APPELLANT**

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

| | |
|---|---|
| United States of America,<br><br>Appellee,<br><br>vs.<br><br>Aimee Marie Bock,<br><br>Appellant. | Appeal No. 26-2234<br><br>**CERTIFICATE OF SERVICE OF APPELLANT'S BRIEF** |

I hereby certify that on August 21, 2026, I electronically filed the Brief of the Appellant with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

**KENNETH UBONG UDOIBOK, P.A.**

Date: August 21, 2026

By: /s/Kenneth U. Udoibok

Kenneth U. Udoibok (262523)
Flour Exchange Building, Suite 5010
310 Fourth Avenue South
Minneapolis, Minnesota 55415
Phone: 612-808-6031
*k@kenulaw.com*

**ATTORNEY FOR THE APPELLANT**